NOT FOR PUBLICATION [1]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 06-1572 (FLW) |
| WAYNE DUNEPHIN STEWARD | : | |
| Debtor, | : | |
| ALFRED VAIL MUTUAL ASSOCIATION, | : | |
| Appellant, | : | **OPINION** |
| v. | : | |
| WAYNE DUNEPHIN STEWARD, | : | |
| Appellee. | : | |

**WOLFSON, District Judge**

Appellant Alfred Vail Mutual Association (the "Association") appeals a final Order and Opinion of the Bankruptcy Court entered February 24, 2006, which declared that the Association, and its attorney, willfully violated an automatic stay under 11 U.S.C. § 362(a)(1) by continuing to pursue removal of the Debtor, Wayne D. Steward, as executor of his deceased sister's estate and that such violation warranted an award of $8,145.00 in attorney's fees and $311.00 in costs in favor of Debtor, and reimbursement to the court in the amount of $39.60 for the cost of the transcript. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the following reasons, the Court will affirm the Opinion and Order of the Bankruptcy Court.

**I. BACKGROUND**

The Association is a residential community located in Shrewsbury Township, New Jersey, consisting of 265 units, comprised of one and two story bungalows with up to six units per bungalow, and is owned under a cooperative form of ownership. In October 1990, the sister of Appellee Wayne D. Steward ("Debtor") purchased a membership certificate to a unit (the "co-op unit") in the Association. Debtor resided in the co-op unit with his sister, Patricia Steward, since the time of her purchase. In April 2003, Debtor's sister died naming Debtor as executor and sole heir to her estate. Debtor has continued to reside in the co-op unit since his sister's death in 2003.

On February 2, 2005, Debtor filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code. The Debtor thereafter, on February 24, 2005, filed an emergent application to compel the Association to restore utilities and access to the unit and for sanctions under Federal Rule of Bankruptcy Procedure 9011 after the Association had apparently shut off utility service based on non-payment of monthly assessments. The Bankruptcy Court denied the emergent application on March 7, 2005, but scheduled an evidentiary hearing. On July 22, 2005, following the evidentiary hearing, the Bankruptcy Court granted Debtor's request to restore utilities, rejecting the Association's argument that Defendant did not own the co-op unit. The Bankruptcy Court denied Debtor's request for sanctions.

The Association on July 12, 2005 filed an objection to the Debtor's Chapter 13 plan based on Debtor's non-payment of monthly Association assessments. On August 5, 2005, the Association moved for relief from the Automatic Stay based on Debtor's failure to pay post-petition assessments. On September 9, 2005, the Debtor filed an objection. On September 23, 2005, the

Bankruptcy Court granted the Association's motion for relief from the automatic stay, however, based on the recommendation of the Chapter 13 Trustee, the Bankruptcy Court dismissed Debtor's first bankruptcy case for failure to make the required pre-confirmation payments.  On October 3, 2005, Debtor filed a second petition.[1]

On October 28, 2005, the Association filed a Verified Complaint (the "Probate Action") and proposed Order to Show Cause in the Superior Court of New Jersey, Chancery Division, Monmouth County, seeking removal of Debtor as executor of the estate of Patricia Steward, based on his failure to administer the estate.  Thereafter, counsel for Debtor demanded that the Association withdraw the pending Probate Action as being in violation of the automatic stay and co-debtor stay and further advised that if the Probate Action was not withdrawn, Debtor would move pursuant to § 362(h) and request sanctions under Fed.R.Bankr.P. 9011.

On November 10, 2005, counsel for the Association advised Debtor that the Association intended to proceed with the Probate Action.  Debtor thereafter filed a "Motion on Shortened Time to Enforce Automatic Stay and Co-Debtor Stay and for Determination that Alfred Vail Mutual Association is in Violation of Both the Automatic and Co-Debtor Stay and for Order Requiring Alfred Vail to Withdraw their Verified Complaint in the Probate Division, and for Attorneys Fees, Costs and Sanctions" (hereinafter, the "Motion to Enforce Stay").  The Bankruptcy Court granted the Debtor's application to shortened time and scheduled the hearing for January 12, 2006.  On January 11, 2006, the Association filed objection to Debtor's motion as

---

[1] Although the Association initially sought dismissal of Debtor's second bankruptcy case on the grounds that he was an ineligible debtor pursuant to § 109(g)(2) for purportedly having filed a second bankruptcy petition less than 180 days after voluntary dismissal of the first petition, the Association withdrew its motion following its determination (and that of the Bankruptcy Court) that the original dismissal was not voluntary.  This issue is not raised on appeal.

3

well as a "Cross-Motion for Relief from Automatic Stay" (hereinafter, the "Cross-Motion for Relief").

At the January 12, 2006 hearing, the Bankruptcy Court preliminarily found that the Association had violated the stay, but reserved decision in order to issue a written opinion. The Bankruptcy Court did, however, temporarily grant Debtor's application to enforce the automatic stay on the record and advised counsel for the Association that it should not proceed with its application in the Probate Court, which was scheduled for the following day. The Bankruptcy Court issued its written decision on February 24, 2006, which is the subject of the instant appeal.

## II.  JURISDICTION

Jurisdiction of the district courts over appeals from orders of bankruptcy courts is governed by 28 U.S.C. § 158(a), which provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees. . . ." 28 U.S.C. § 158(a).  An appeal under 28 U.S.C. § 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." 28 U.S.C. § 158 (c)(2).

## III.  STANDARD OF REVIEW

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005).  Legal conclusions of the bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995). The factual determinations of the bankruptcy court are not to be set aside

4

unless "clearly erroneous." See Fed. R. Bankr.P. 8013; Chemetron, 72 F.3d at 345; In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir.1995).  On review of the factual findings of a bankruptcy court, a district court must "give 'due regard' to the opportunity of that court to judge first-hand the credibility of the witnesses." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir.1995).  Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. Chemetron, 72 F.3d at 345.

## IV.  DISCUSSION

Three of the six issues raised by the Association on appeal rest, at least in part, on its contention that the Superior Court of New Jersey, Chancery Division, Probate Part (the "State Probate Court") determined that the proceeding seeking the removal of Debtor as executor of his deceased sister's estate (the "Probate Proceeding") was not subject to the automatic stay.  Thus, before reviewing the Bankruptcy Court's findings regarding the application of the automatic stay to the Probate Proceeding, the Court will first address whether the Bankruptcy Court correctly determined that the State Probate Court did not rule on the applicability of the automatic stay.

According to the Association, "[o]n November 16, 2005, Judge Lehrer ruled that the automatic stay did not apply to the Probate Action." (Appellant's Brief at p. 19).  In support of its position that the Probate Court ruled on the non-applicability of the automatic stay, the Association points to the fact that the judge was supplied with "extensive briefs" from the parties in the State Probate Proceeding concerning the application of the automatic stay.  According to the Association, in the three week period from the filing of its Verified Complaint on October 28, 2005 to the entry of the Order to Show Cause on November 16, 2005, the parties filed numerous

papers with the State Probate Court addressing the application of the automatic stay. The Association argues that because judges are charged with the duty to "read moving papers and briefs" pursuant to New Jersey Court Rule 1:6-7, the State Probate Court necessarily considered the issue before entering the Order to Show Cause which stated the following:

> "IT APPEARING that, pursuant to Rule 4:57-1(a) and 4:83-1.seq. [sic] of the New Jersey Court Rules, and from the Court's ***review of the Verified Complaint/and Amended Complaint*** that this matter may proceed in a summary judgment manner, and ***good cause appearing*** for the entry of an Order to Show Cause:
>
> It is on this 16th day of November 2005
> Ordered:
>
> 1. The parties shall cause [sic] before the Monmouth County Chancery Court . . . on 13th day of January 2005 ***why the following relief*** sought under the Petition's [sic] Amended Verified Complaint ***should not be granted*** . . . .

The Association points to the highlighted language in the foregoing passage from the Order to Show Cause as proof that the State Probate Court ruled that the automatic stay did not apply. As further evidence that the State Probate Court considered the application of the automatic stay, the Association relies upon the following colloquy that occurred between counsel for the Association and the State Probate Court following the Bankruptcy Court's determination that the State Probate Proceeding had been filed in violation of the automatic stay:

> MR. ONDER: I'm here specifically this morning, Your Honor, to withdraw the complaint by the Alfred Vail Mutual Association, and also request a dismissal without prejudice of our complaint . . . [1T3:17-20].[2]
>                                     ***

---

[2] "1T__:__" refers to the transcript of the January 13, 2006 hearing before the State Probate Court.

> THE COURT: I don't know what else you can do.  Here, you're
> the homeowner's association, he's the executor of the estate,
> nobody's paying anything on it, the place is going downhill.  I
> don't know what else you can do. [1T4:13-17].

***

> THE COURT: I do not understand something.  How could your
> complaint possibly be a violation of the automatic stay when
> your complaint basically is addressed to an estate.  The estate
> isn't in bankruptcy. [1T8:6-10].

***

> THE COURT: . . . Judge Lyons did what he did.  I don't agree
> with him, but that's his prerogative.  That's not my prerogative to
> do that.   [1T10:10-12].

It is clear from the foregoing that the Association supports its conclusion that the State Probate Court ruled on the inapplicability of the automatic stay not by any express finding by the Probate Court on the record, but, rather, by a conglomeration of factual circumstances and vague statements in the transcript before the State Probate Court.  This Court is unconvinced and agrees with the Bankruptcy Court's conclusion that the State Probate Court made no determination as to the inapplicability of the automatic stay in issuing the November 16, 2005 Order to Show Cause.

Furthermore, complete review of the transcript of the colloquy that occurred between counsel and the State Probate Court upon the Association's withdrawal of its Amended Verified Complaint makes clear that the State Probate Court never ruled on the applicability of the automatic stay.  Indeed, it is clear from the questions posed by the State Probate Court that the judge was completely unfamiliar with the basic facts relevant to a decision on the applicability of the automatic stay.  For example, the court inquired the following:

>THE COURT: Who's in bankruptcy?
>
>MR. ONDER: Mr. Steward, a debtor, is in bankruptcy.
>
>THE COURT: What does that have to do with this case? [1T7:7-11].
>
>\*\*\*
>
>MR. ONDER: As such, Your Honor, one of the other things that Judge Lyons had advised yesterday, we had filed a cross-motion on this shortened motion for the Judge, that Mr. Steward had not paid Association fees, taxes, and other things like that.  Mr. Steward, though he did tender some payment, Judge Lyons did rule on a cross motion, and granted us relief from the automatic stay to come back or to proceed in any State Court proceeding that we wanted to, upon the next default of Mr. Steward if that occurs on the first of the month.
>
>THE COURT: I don't understand, whose name is the unit in?
>
>MR. ONDER: It is currently, the Association issues a membership certificate.  Because it's a co-operative Association.
>
>THE COURT: Whose certificate?
>
>MR. ONDER: The certificate is still in the name of Patricia Steward.
>[1T9:7-25].

It is not surprising that the State Probate Court was unfamiliar with the facts relevant to a decision on the automatic stay as the State Probate Court was not, as the Association contends, supplied with "extensive briefs" from the parties addressing the issue of the automatic stay. What in fact occurred was that upon the filing of the Association's Verified Complaint on October 28, 2005, Debtor's counsel notified the Association by three-page letter dated November 1, 2005, with a copy to the State Probate Court and Bankruptcy Court, that he

viewed the filing of the Verified Complaint as a violation of the automatic stay. The Debtor's counsel also directed a two-page letter to the State Probate Court, with a copy to the Bankruptcy Court, similarly asserting his view that the automatic stay was applicable to the Verified Complaint. Clearly the letters were not intended to provide the Court with briefing on the issue of the applicability of the automatic stay, but, rather, to put the Association and the State Probate Court on notice that Debtor intended to take appropriate action against the Association in the bankruptcy proceeding in the event the Association did not voluntarily dismiss the Probate Proceeding. Thereafter, on November 20, 2005, the Association filed an Amended Verified Complaint purportedly seeking only the removal of the Executor and not any action against the Debtor's interest. Although counsel for the Association represents to this Court that the supplemental brief submitted to the State Probate Court along with the Amended Verified Complaint addressed "why the automatic stay did not apply", this Court's review of the supplemental brief reveals that the issue of the automatic stay was never even addressed in the brief, other than a reference in a footnote to the fact that the Association was not conceding (presumably referring to its filing of the Amended Verified Complaint) that the co-debtor stay of Bankruptcy Code Section 1301 applies.

   It is abundantly clear from the Court's review of the record below that the State Probate Court was not provided with "extensive" briefing on the issue of the automatic stay and understandably, never considered the applicability of the automatic stay prior to entering the Order to Show Cause. As the Bankruptcy Court correctly noted, the mere fact that the State Probate Court continued the proceeding is not an implicit ruling that the state court judge considered the automatic stay and determined that it did not apply. See Patti v. Fred Ehrich,

PC, 304 B.R. 182, 187 (E.D.Pa. 2003)(rejecting argument that by proceeding, state court must have decided applicability of the stay *sub silento*).  Because I conclude that the State Probate Court did not rule on the applicability of the automatic stay, I reject the Association's contention that reversal is warranted based on the Bankruptcy Court's failure to follow the Rooker-Feldman doctrine in connection with the Probate Court's entry of the Order to Show Cause.

"Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Township Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006).  "[A]pplication of the Rooker-Feldman doctrine is necessarily limited to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Taliaferro, 458 F.3d at 192 (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).  The Rooker-Feldman doctrine precludes "lower federal court jurisdiction over claims that were actually litigated or those 'inextricably intertwined' with adjudication by a state court." Taliaferro, 458 F.3d at 192 (quoting Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000)).  "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, '[w]here federal relief can only be predicated upon a conviction that the state court was wrong.'" Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000)(quoting Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989).  Here, where the State court never considered whether the automatic stay

10

applied before entering the Order to Show Cause, the Rooker-Feldman doctrine simply does not apply.³

Next, the Court turns to the Association's argument that the Bankruptcy Court erred in finding that the Probate Proceeding against the Estate of Patricia Steward violated the automatic stay. Section 362 of the Bankruptcy Code provides, in pertinent part,

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of -
>
> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . .

According to the Association, the automatic stay is inapplicable to the Probate Proceeding filed against the Estate of Patricia Steward because the automatic stay applies only to actions against the debtor and not to non-debtor third parties. In support of this position, the Association claims that the following passage from the legislative history of the Bankruptcy Code specifically addresses the issue in the Association's favor:

> A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed

---

³ The Court notes that even if the State Probate Court had addressed the applicability of the automatic stay, the Rooker-Feldman doctrine has questionable application. Collateral challenges to a state court's automatic stay determination are not necessarily forbidden under the doctrine because actions taken by a state court in violation of the automatic stay are viewed as void *ab initio*. See Raymark Industries v. Lai, 973 F.2d 1125, 1131-32 (3d Cir. 1992)(distinguishing a permissible collateral attack on an automatic stay determination from a collateral attack on the merits of state court litigation).

> because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

See H.R.Rep. No. 595, 95th Cong. 1st Sess. 343-344 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 52-53 (1978), U.S. Code Cong. & Admin.News pp. 5787, 5838, 5839, 6299, 6300. The Court fails to see how the foregoing supports the Association's position. As the Bankruptcy Court noted in its Opinion, "[t]he legislative history states relief is *usually* given in these situations, but not necessarily, and not without first being requested." Contrary to the Association's assertion, the Probate Proceeding is not "consistent with the legislative history" where the Association failed altogether to request the stay prior to filing.

The critical issue in determining whether the automatic stay applies to the Probate Proceeding to remove Debtor as executor is whether the Probate Proceeding constitutes an action against the Debtor. To answer this question, the Bankruptcy Court examined the decision in In re Panayotoff, 140 B.R. 509 (Bankr.D.Minn. 1992), which involved similar facts. There, as here, a creditor sought an order in state court removing the debtor as personal representative of an estate. Id. at 511. The debtor thereafter sought an order declaring the creditor's prosecution of the probate proceeding as a violation of the automatic stay. Id. Rather than focus on the issue of whether the debtor's status as personal representative of the probate estate is itself a property interest, the court in Panayotoff held that the proper focus was whether the proceedings against a debtor in her capacity as personal representative were covered under the plain language of 11 U.S.C. § 362(a)(1). Id. The Panayotoff court answered that question in the affirmative, finding that Section 362(a)(1) "creates a restraint and

12

injunction against *any* judicial proceeding against a debtor in bankruptcy . . . unless one of the specific exceptions of 11 U.S.C. § 362(b) is applicable." Id.  The Panayotoff court reasoned that the scope of the automatic stay is not limited to actions for monetary recovery against the debtor, nor is it limited to actions or proceedings brought against the debtor in her personal capacity or her status as obligor in a debtor-creditor relationship.  Id.  Thus, the Panayotoff court concluded, Section 362(a)(1) "stays judicial proceedings brought against a debtor solely in the debtor's capacity as personal representative of a probate estate."   See also, Carver v. Moody, 780 So. 2d 934 (Fla. 2001)(finding that where debtor is executor or administrator of another's estate, party must seek relief from automatic stay); In re Fiedler, 34 B.R. 602, 603 (Bankr.D.Colo. 1983)(holding automatic stay applies to debtor in her capacity as personal representative).   This Court agrees with the reasoning of the court in Panayotoff and that of the Bankruptcy Court below, particularly here where debtor is the sole beneficiary of the estate, the Association is the sole secured creditor, and the only asset in the estate is the interest in the Association's co-op.

The Association's reliance on In re Ritter, 46 B.R. 183 (Bankr. E.D. Pa 1985) is misplaced. The application of the automatic stay was not even at issue in Ritter.  The only issue before the Court in Ritter was whether the bankruptcy court had jurisdiction to hear certain counts in an adversary complaint *brought by debtor*, solely in her capacity as administratrix of a decedent's estate.  The fact that the Ritter court held that it did not have jurisdiction to adjudicate probate claims in an action brought by debtor does not lend itself to the conclusion that a creditor need not request relief from the automatic stay prior to instituting a probate proceeding against a debtor.  Equally unavailing is the Association's reliance on In re Estate of Nelson, 243 Mont.

13

276, 279 (Mont. 1990). While the Nelson court indeed held that the automatic stay was inapplicable to a proceeding to remove a debtor as personal representative of an estate, this Court agrees with the Panoyotoff court that "Estate of Nelson is bad authority; its reasoning is conclusory and evasive, and its conclusion is neither self-evident nor supported by the facial language of § 362(a)(1)." Panoyotoff, 140 B.R. at 512, n.7.

The Court likewise rejects the Association's contention on appeal that its conduct, and that of its attorneys, does not constitute a willful violation. "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." In re Atlantic Bus. and Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990)(quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989). The Association's argument that there was no willful violation is premised on its unwavering position that "there was no stay to violate." The Association contends that its actions and that of its attorneys could not possibly constitute willful violations of the automatic stay because there was no stay to violate where the Probate Proceeding merely sought removal of the Debtor in his capacity as executor and did not seek to diminish any property interest of the Debtor. As discussed at length, supra, this Court affirms the Bankruptcy Court's conclusion that the Probate Proceeding was indeed subject to the automatic stay and, thus, the Association was required to request relief from the stay prior to instituting the action. The Association's failure to do so constitutes a willful violation on the part of the Association and its counsel.

Finally, on the issue of the violation of the automatic stay, the Association argues that the imposition of sanctions was unjustified and punitive. In support of its contention, the

Association points to In re Hawk, 314 B.R. 312, 318 (Bankr. D.N.J. 2004) in which the bankruptcy court held, relying on the third circuit's decision in In re University Medical Center, 973 F.2d 1065, 1088 (3d Cir. 1992), that sanctions were inappropriate where persuasive legal authority exists which indicates that the creditor's actions do not violate the stay and the law on the issue is sufficiently unsettled.

In awarding sanctions for the violation, the Bankruptcy Court below rejected the Association's reliance on In re Hawk.  The Bankruptcy Court first noted that the Association's reliance on that case was "ironic" in light of the fact that counsel for the Association had also served as counsel to the association in In re Hawk that pursued a state court action to collect post-petition assessments without first seeking relief from an automatic stay.  According to the Bankruptcy Court, "[t]he law firm that avoided sanctions once should have been chastened." Additionally, the Bankruptcy Court concluded that In re Hawk was inapplicable because here the persuasive case law did not support the Association's position.  Additionally, the Bankruptcy Court noted that the absence of binding precedent does not render the law on an issue unsettled.  This Court likewise finds the Association's reliance on In re Hawk unavailing. The Court agrees with the Bankruptcy Court's assessment that persuasive authority should have led the Association to the conclusion that relief from the automatic stay was necessary prior to filing the Probate Proceeding.

Additionally, this Court does not find that the Bankruptcy Court abused its discretion in finding reasonable the Debtor's request for fees and costs in the amount of $8,145.00 and $311.00, respectively.  As indicated, the Bankruptcy Court's determination that the Probate Proceeding constituted a willful violation of the automatic stay is supported in the record.  The

15

damages sought as a result of this willful violation were limited to those "fees and costs" associated with the Debtor's enforcement of the automatic stay.  The Bankruptcy Court commented on the Association's strategic decision in its opposition to the Debtor's request for fees and sanctions to reargue its previously asserted positions regarding the inapplicability of the automatic stay, rather than the focus on the fees sought by Debtor.  Nevertheless, the Bankruptcy Court reviewed the certifications submitted by Debtor's counsel and concluded that the request was reasonable.  This Court agrees and is unpersuaded by the arguments raised by the Association on appeal.  I do not find the hourly rate of $275 unreasonable, nor do I find the number of hours expended by Debtor's counsel in enforcing the automatic stay to be unreasonable.

The last issue raised on appeal concerns the Association's Cross-Motion for Relief from the Automatic Stay filed by the Association. The Association argues that the Bankruptcy Court improperly declared the conditional grant of relief from the stay moot upon the issuance of its February 24, 2006 Opinion.  In short, the Association contends that the Bankruptcy Court "conditionally granted the Association relief from the automatic stay" during argument on the motion and then reversed his decision when he issued his written decision declaring the Cross-Motion for Relief moot.

According to the Association, as of the date of the argument on the Cross-Motion for Relief the Debtor owed a total of $1,753.69 in post-petition assessments, yet Debtor's attorney represented that Debtor had only made $1,500.00 in payments two (2) days prior to the hearing. The Association further argues that the Bankruptcy Court recognized certain "environmental deficiencies" of the Debtor.  Thus, the Association contends that the Bankruptcy Court's abrupt

refusal to grant the stay relief in its written opinion that it had conditionally granted on the record was in error.

This Court does not find reversible error in the Bankruptcy Court's denial of the Association's Cross-Motion for Relief because I disagree with the Association's characterization of the Bankruptcy Court's ruling on the record.  The Bankruptcy Court stated the following:

> As to the continuation of the automatic stay, the cross motion by the Alfred Vail Mutual Association for relief from the automatic stay, I'm going to grant relief by conditioning the stay upon Mr. Steward making timely payments to the Trustee in accordance with his proposed plan.  Upon Steward making timely payments to the Association for all post petition charges.
>
> If Mr. Steward is in default by five days or more, the Association will file a certification of default, in which case further relief from the stay will be granted to allow the Association to enforce its rights under State law, whatever they may be. [2T12:15-13:1.][4]

The foregoing makes clear that the Bankruptcy Court conditioned the automatic stay <u>going forward</u> on Debtor's compliance with the proposed plan.  The Bankruptcy Court made no findings on the record with respect to the claimed post-petition assessment deficiencies or environmental deficiencies.  Clearly by declaring the Association's Cross-Motion for Relief moot in the written opinion, the Bankruptcy Court accepted the representation by Debtor's counsel that Debtor was current in his payments as of the date of the argument.

---

[4]  "2T__:__" refers to the transcript of the January 12, 2006 hearing before the Bankruptcy Court.

17

With regard to the claimed environmental deficiencies the Bankruptcy Court made no findings whatsoever because the issue was not properly raised by the Association in its Cross-Motion for Relief. In the letter brief submitted by counsel on January 11, 2006 in support of the Cross-Motion, the only basis proffered by the Association for relief from the automatic stay was Debtor's failure to pay post-petition fees and Chapter 13 payments. Debtor never even raised the "environmental" issues until the hearing and then only in the context of defending the Association's decision to file the Probate Proceeding without first obtaining relief from the automatic stay. Although the Association briefly addressed the issue in a "formal objection" filed by the Association on February 7, 2006, following the January 12, 2006 hearing on the Cross-Motion, the issue clearly was not raised as part of its Cross-Motion and was not properly before the Court. Indeed, in raising the issue, post argument, the Association did not even brief the issues, noting essentially that the environmental issues were "previously briefed and testimony given by the Association in the last bankruptcy case."

## V. CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's finding that the Probate Proceeding constituted a violation of the automatic stay and the Bankruptcy Court's denial of the Association's Cross-Motion for Relief as moot, and will affirm the award of fees and costs in favor of Debtor.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: December 20, 2006